such a pleading. If the plaintiff has a cause of action, he should set it out in his complaint, so that the defendants may understand it.

The judgment overruling the demurrer, appealed from, should be reversed, with costs of appeal, and the demurrer sustained, with costs, and with the usual leave to plead over upon payment of costs. All concur.

HOFFMAN v. SYRACUSE RAPID-TRANSIT RY. CO.

(Supreme Court, Appellate Division, Fourth Department. March 21, 1900.)

1. STREET RAILROADS—COLLISION—PROXIMATE CAUSE.
  The negligence of defendant's motorman in operating its electric car at an excessive rate of speed, and in failing to have it under proper control, does not authorize a recovery for injuries to plaintiff's team sustained in a collision with the car, where the collision could not have been avoided even if the car had been driven at a proper rate of speed, and had been under proper control.

2. SAME—OPERATION OF CAR—DUTY OF MOTORMAN.
  It is not the duty of a motorman operating an electric car, when he sees a horse some distance away, left untied, between the track and the gutter, to slow down his car, and get it under such control that he can avoid a collision if the horse should suddenly go upon the track, since he may assume, until the contrary appears, that the horse is gentle, and not afraid of street cars.

3. SAME—BURDEN OF PROOF.
  In an action for injuries to plaintiff's team sustained in a collision with defendant's electric car, the burden is on plaintiff to show that his employé in charge of the team was free from contributory negligence.

4. SAME—CONTRIBUTORY NEGLIGENCE.
  In an action for injuries to plaintiff's horse, sustained in a collision with defendant's electric car, it appeared that plaintiff left the horse untied and unattended on a dark, stormy night, in a narrow space between the track and the street gutter, where a car with a headlight was liable to approach at any moment at a rapid rate of speed. Held, that he was guilty of contributory negligence.

Appeal from Onondaga county court.

Action by August C. Hoffman against the Syracuse Rapid-Transit Railway Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Stone, Gannon & Petit, for appellant.
Arthur B. Rider, for respondent.

WILLIAMS, J. The action was brought to recover damages for injuries to personal property alleged to have been caused by the negligence of the defendant. The accident resulting in the injuries in question occurred February 19, 1898, at 10:30 o'clock at night, on Butternut street, in the city of Syracuse. The defendant was then operating a single-track surface railway upon that street by means° of electricity as a motive power. The plaintiff's employé was engaged in delivering packages of meat to his customers in the city, using a horse and sleigh in that business. He drove up in front of a customer's house, between the street-car track and the gutter of the

street, where the track was 10 feet from the gutter, and, leaving the horse untied and unattended, went to the back door to deliver a package of meat. While he was gone, a car came down the street, approaching the horse in front. When the car was about 10 or 15 feet away, the horse suddenly turned across the track in front of the car, and a collision took place, resulting in the injuries for which damages were claimed. It was a dark night, and there was no light near the point of the accident. It was storming, and there was sleet and ice upon the tracks and the trolley wire. The distance from the conveyance to the back door where the meat was delivered was 92 feet. The back door was behind the house, so that the street could not be seen from that door. A car approaching the horse could be seen 1,028 feet away. The plaintiff's employé looked up the street, and saw no car when he left the street to deliver the meat. It was about 30 seconds after he left the street when the collision took place. The horse was of good disposition, quiet, docile, and gentle, never known to shy or show fear of anything before. The car was an old horse car fitted up with motors under it, and made more noise than a new car. It was running downgrade when the collision occurred, and at the rate of 20 miles per hour. The motorman had full power upon the car, and was looking in the car, laughing, and apparently did not see the horse, until the car was quite near him. There was an ordinance of the city prohibiting the propelling of street cars at the point of the accident at a greater rate of speed than 15 miles per hour. There was also an ordinance of the city making it a crime to leave a horse untied in the streets. These are the facts, stated most favorably for the plaintiff, upon which the recovery was had in the case.

We are of the opinion that the plaintiff failed in two respects to make out a cause of action, or to make a case entitling him to go to the jury. He did not show that the negligence of the defendant caused the injuries, and he did not show his employé free from contributory negligence. The grounds of negligence submitted to the jury were excessive rate of speed and failure to have the car under proper control. The court failed to call the attention of the jury to the question whether either of these acts of negligence caused the injuries. The plaintiff claimed that the car was going 20 miles an hour. Suppose it was going only 15 miles an hour, or even 10 miles an hour, could it have been stopped after the motorman had notice that the horse was likely to get upon the track; that is, when the car was within 10 or 15 feet of the horse? Clearly not. The car running at 10 or 15 miles an hour could be within the ordinance, and this could, under the circumstances, hardly be regarded as an excessive rate of speed upon that street. If, going at that proper rate of speed, the car could not have been stopped in time to avoid the injuries, then certainly it could not be said the excessive rate of speed caused the injuries. The same is also true of the other ground of negligence,—the failure to have the car under control. If, being under control and running 10 or 15 miles an hour, it could not have been stopped within the 10 or 15 feet, then it was not the failure to have it under control that caused the accident. The fact is, the

cause of the accident was the action of the horse in turning suddenly across the track, 'when the car was so close that the collision could not be avoided, even if the motorman was entirely free from any negligence; and, this being so, it could not be said that it was the negligence of the motorman that caused the injuries. It cannot be claimed that it was the duty of the motorman, if he saw the horse, when some distance away, to slow down his car, and get it under such control that he could avoid a collision by stopping the car within a few feet, if the horse chanced suddenly to go upon the track. He had a right to assume, until the contrary appeared, that the horse was gentle, and not afraid of street cars, and would remain standing when the car approached and passed him; otherwise, he would not have been left alone, unhitched, so near the tracks. He was only called upon to slow down, and get his car under control so as to be stopped quickly, when he was apprised by some action of the horse that he was likely to change his position of safety, and go upon the track, a place of danger. The cause of the injuries was not the negligence of the motorman; it was the act of the horse, left alone, unhitched, in the street, so near the car tracks. It was the duty of the plaintiff to show that his employé was free from contributory negligence. The burden was upon him. The burden was not on the defendant to prove such negligence. The evidence bearing upon this question is not in dispute. The horse was left alone, untied, in a dark, stormy night, in a narrow space between the track and the street gutter, when cars were liable to come past at any moment, and at a place in the city where the 15 miles an hour ordinance applied, and where he was bound to assume a car might come down the track, out of the dark, at a rapid rate of speed, with its headlight staring the horse in the face, and so close to him that the side of the car would almost touch his body. And yet the jury were permitted to say, and they did say, that this was not contributory negligence. Comment is hardly necessary. The jury would have been justified in saying that the horse was morally certain, under the conditions surrounding him, to leave his position of apparent danger, and make an effort to get to a place of safety. He stood his ground fearlessly, facing that object coming at him out of the dark, with its bright headlight, until it was nearly upon him, and then he turned across the track. We apprehend that a man of no more than ordinary intelligence would, under the same circumstances at least, have taken to the sidewalk, and put a safe distance between him and the car. We cannot agree that the plaintiff's employé should be found, even by a jury, free from contributory negligence, under such a condition of facts. The defendant moved for a nonsuit. Its motion was denied. It should have been granted. The case should not have been submitted to the jury.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.